BEER, Judge.
On February 29, 1976, Donald King and his two minor sons, Bryan and David, visited at the home of Gizelle Whitley, in La-Place, Louisiana. He parked his new 1976 F-250 Ford pickup/camper (which he had owned for two days) in Ms. Whitley’s driveway. In the course of their visit, the new vehicle was discussed, and, about an hour after King and the boys arrived, they all went out to see it. Ms. Whitley’s sister, Jaime Whitley, indicates the younger boy, Bryan, ran ahead and jumped into the cab of the truck. Then, as David, the older boy, reached a point behind the truck, it began rolling backward down the Whitley driveway, which is slightly inclined. Attempting to rescue David from the backsliding truck, King and Jaime Whitley were struck by it, but, worse, the rear wheel rolled over David and, as a result, he sustained severe brush-burns on his face and a broken collarbone.
As the truck started to roll backwards, Gizelle Whitley made for the cab, got in and applied the foot brake. Acknowledging that she was quite upset by the circumstances, she, nevertheless, recalls checking the transmission indicator after she brought the truck to a stop. It was — she stated — on “Park”. Jaime Whitley also testified that she looked in the cab of the truck after the accident and found the transmission indicator to be on “Park” and also observed that the parking brake was “far to the floor,” or fully engaged. However, King’s unequivocal testimony is to the effect that he had engaged the parking brake only a “normal” distance, which was described by him as being about half-way down. King was, however, sure that the transmission indicator was on “Park” and had been so from the time that he and the boys first arrived, parked, and went into the Whitley residence.
Much of the extensive record of this four day long jury trial deals with the development of evidence of King’s attempts to recreate the occurrence of the accident for the purpose of conducting tests to determine if a defect could be demonstrated in the parking brake and/or transmission. He sought, through able counsel, to prove negligence on the part of Ford in the design or manufacture of the car, and on the part of Lousteau Auto Sales, Inc. (from whom the truck was purchased), by contending that they were guilty of improper inspection and%or making improper adjustments of the brakes and the transmission system.
*322 From an adverse jury verdict, King appeals, contending that the jury erred by apparently ignoring the testimony of the expert witness, called by plaintiff, Dr. I. Robert Erlich. Dr. Erlich, a mechanical engineer, believed that the cause of the accident was either: 1) too much play in the linkage to the transmission caused by improper adjustment or assembly so that the parking pall would not engage when the vehicle transmission lever was in a parked position, or 2) improper adjustment of the parking brake linkage cable.
The record indicates that the F-250 Ford pickup is equipped with a safety neutral switch which allows one to start the engine only when the transmission indicator is in park or neutral. King points out that he started the truck immediately after the accident (to take David to the hospital), so that, he contends, the transmission indicator must have been on “Park.” Therefore, he contends, that the truck must have rolled backward while in “Park” and, thus, clearly demonstrated the existence of a defect in the transmission indicator mechanism. The jury’s apparent rejection of this contention suggests that their conclusion may have been that King failed to put the gear shift level all the way into “Park” and/or failed to fully depress (and thus adequately engage) the parking brake.
King made several attempts to reproduce the backward rolling of the truck as it is contended to have occurred at the time of the accident. Several days after the accident, he sought to duplicate the entire incident that had taken place in the Whitley driveway. Lousteau salesman Joseph J. Tooley, Jr. and Lousteau service manager Farrell Barre also conducted tests, including the placing of the truck on a fairly steep incline with the transmission indicator in “Park.” In one of these “tests,” the truck did roll backward. Tooley and Barre testified that in that instance, King had not manipulated the transmission indicator so that it was fully in the “Park” position. Tooley testified that to engage the “Park” mechanism, the lever must be handled resolutely and that one can feel when the “Park” mechanism is engaged.
According to Barre, King was asked to return the vehicle to the shop the day following their being informed of the accident, but it was two months before King returned and asked to have the transmission and parking brake adjusted. Meanwhile, he apparently contacted counsel, who then hired Dr. Erlich to conduct various tests. When Barre tested the truck, including the placing of it on an incline, backward rolling could not be duplicated with the transmission indicator in “Park.” Barre further tested the vehicle by placing the indicator on “neutral” and at the same time he fully engaged the parking brake. Again, the vehicle would not roll. Mechanic Nolan Rous-sel found no adjustments to the transmission linkage were required.
In our view, the record provides a valid basis for the jury to have concluded that the vehicle was not defective or unsafe. Though Dr. Erlich conducted various tests of the parking brake and transmission and found one-half inch “slop” (or slackness) in the transmission linkage, his responses on cross-examination may well have been interpreted by the jury to have diminished the validity of such conclusions. Dr. Er-lich’s testimony may have been further weakened in the eyes of the jury due to his acknowledgement that he could not recall whether he asked King to engage the parking brake on the occasion of the tests.
The evidence indicated that the 1976 Ford truck manual contains, in capital letters, the warning: “DO NOT USE THE PARK POSITION AS A SUBSTITUTE FOR THE PARKING BRAKE. SET THE PARKING BRAKE EVERY TIME YOU USE THE VEHICLE.” Since King unequi-vocably testified that it was only one-half way depressed at the time of the accident, the jury may well have chosen not to accept the testimony of Dr. Erlich that some maladjustment of the vehicle was the cause of the accident. Such rejection cannot, in our view, be described as manifest error in light of the existence of sufficient evidence to support their verdict.
The judgment is affirmed.

AFFIRMED.